**KAISER STEEL CORPORATION, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent,**

**Ronald J. Robarge, Respondent-Claimant.**

**No. 85–7628.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 9, 1986.*

Decided March 10, 1987.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

Timothy G. Keller, San Francisco, Cal., for petitioner.

Department of Labor, Office of the Solicitor; George R. Salem, Donald S. Shire and Karen Kimball, Washington, D.C., for respondent, Office of Workers' Compensation Programs.

Vernon Goldwater, Wilmington, Cal., for respondent, Ronald J. Robarge.

Before WALLACE, POOLE and WIGGINS, Circuit Judges.

POOLE, Circuit Judge:

Kaiser Steel Corporation ("Kaiser") petitions for review of a final order of the Benefits Review Board (the "Board") which affirmed an award of compensation to Robert Robarge, pursuant to the Longshore and Harbor Workers' Compensation Act ("Longshore Act"), 33 U.S.C. § 901 *et seq.*, as extended by the Outer Continental Shelf Lands Act ("Lands Act"), 43 U.S.C. § 1331 *et seq.* Kaiser contends that employees such as Robarge are not eligible for Longshore Act benefits. We disagree and deny Kaiser's petition.

Robarge was employed by Kaiser as a pipefitter/welder on a stationary, offshore oil platform under construction on the Outer Continental Shelf ("OCS") off the coast of Huntington Beach, California. Kaiser, a subcontractor, was responsible for the "fabrication, hook-up and commissioning" of the platform's modular components. The "hook-up" required Kaiser to install connective piping between the prefabricated modules. The piping would serve to transport oil, gas, water and air throughout the platform. On May 5, 1983, while welding some of this piping into place, Robarge fell from the temporary scaffolding and sustained serious injury, as a result of which he was completely disabled until November 3, 1983.

Robarge sought compensation for his injuries under the Longshore and Lands Acts. After a hearing, the administrative law judge ("ALJ") held for Robarge. On January 1, 1985, the Board, exercising its jurisdiction under 33 U.S.C. § 921(b)(3), affirmed. A timely petition for review followed. 33 U.S.C. § 921(c).

The issue before us is whether a pipefitter/welder who has sustained disabling injury during the construction of an offshore oil platform located on the OCS, preparatory to the extraction of oil and gas, is eligible for compensation under the Longshore Act, as extended by the Lands Act.

The Lands Act was enacted in 1953 for the purpose of permitting the "area in the outer Continental Shelf beyond boundaries of the states" to be "leased and developed by the Federal Government." H.R.Rep. No. 413, 83d Cong., 1st Sess. 2, *reprinted in* 1953 U.S.Code Cong. & Admin.News 2177, 2177. The Lands Act was amended in 1978 to provide "a new statutory regime for the management of the oil and natural gas resources of the Outer Continental Shelf." H.R.Rep. No. 590, 95th Cong. 2d Sess. 53, *reprinted in* 1978 U.S.Code Cong. & Admin.News 1450, 1460. These changes were intended to "expedite the systematic development of the OCS, while protecting our marine and coastal environment." *Id.*

As amended, the Lands Act extends the jurisdiction of the United States to the "subsoil and seabed" of the OCS and to "artificial islands" and other "installations" and "devices" attached to the OCS seabed "for the purpose of exploring for, developing, or producing resources" on the OCS. 43 U.S.C. § 1333(a)(1). The Lands Act also extends the scope of coverage provided by the Longshore Act to include certain employees injured in the course of their work on the OCS.[1]

---

1. The relevant statute provides:

    With respect to disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf for the purpose of

exploring for, developing, removing, or transporting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf, compensation shall be payable un-

Kaiser advances three arguments for the proposition that the Lands Act does not extend the compensation provisions of the Longshore Act to Robarge. First, the Lands Act only applies to energy industry employees. Second, Kaiser's operations were not conducted for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources of the OCS. Third, Robarge was not an "employee" within the meaning of section 1333(b)(1).

■ This court reviews Board decisions for errors of law and for adherence to the statutory standard governing the review of an ALJ's factual determinations. *Long v. Director, OWCP,* 767 F.2d 1578, 1580 (9th Cir.1985). By statute, the Board must accept the ALJ's findings if they are supported by substantial evidence. 33 U.S.C. § 921(b)(3). The Board's interpretation of the Longshore Act is not entitled to any special deference. *Long v. Director,* 767 F.2d at 1580. This court has, however, indicated that it will respect the Board's interpretation of the Longshore Act "where that interpretation is reasonable and reflects the policy underlying the statute." *Id.* (quoting *National Steel and Shipbuilding Co. v. United States Department of Labor,* 606 F.2d 875, 880 (9th Cir.1979)).

■ Kaiser's argument that the Lands Act extends Longshore Act coverage only to energy industry workers is baseless. On its face, the extension provision bears no such delimitation. Had Congress intended to restrict the provision to a particular industry, it surely would have done so explicitly. Nor can a limitation to any specific industry be read into the section by way of the legislative history of the Lands Act. The mere fact that the legislative history contains references to the oil and gas industry does not mean that Congress intended to restrict the extension of the Longshore Act to energy industry employees.

■ Kaiser's argument with respect to the purpose of its operations is equally wide of the mark. Section 1333(b) of the Lands Act extends the compensation provisions of the Longshore Act to employees injured on the OCS as the result of "operations" conducted "for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources ... of the outer Continental Shelf." Robarge's welding activities contributed directly to the development of the natural resources of the OCS. Our assessment is buttressed by the definition of the term "development," as used in the Lands Act, which expressly includes "platform construction." 28 U.S.C. § 1331(*l*).

■ Furthermore, as opinions in the Fifth Circuit demonstrate, the provision's "purpose" requirement should not be narrowly construed. *See Musial v. A & A Boats, Inc.,* 696 F.2d 1149 (5th Cir.1983) (benefits awarded under the statute to a night cook employed aboard offshore oil platform injured while boarding tender vessel); *Barger v. Petroleum Helicopters, Inc.,* 692 F.2d 337, 340 (5th Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1316 (1983) (benefits awarded to the family of a helicopter pilot killed while transporting workers and equipment to offshore oil platform). A broad reading of the provision is in keeping with the remedial purpose of the Longshore Act. *See Reed v. The Yaka,* 373 U.S. 410, 415, 83 S.Ct. 1349, 1353, 10 L.Ed.2d 448 (1963).

■ Finally, we see no merit in Kaiser's assertion that Robarge was not an

der the provisions of the Longshore and Harbor Workers' Compensation Act [33 *U.S.C.* § 901 et seq.]. For the purposes of the extension of the provisions of the Longshore and Harbor Workers' Compensation Act under this section—
(1) the term "employee" does not include a master or member of a crew or any vessel, or an officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof;
(2) the term "employer" means an employer any of whose employees are employed in such operations; and
(3) the term "United States" when used in a geographical sense includes the outer Continental Shelf and artificial islands and fixed structures thereon.
43 U.S.C. § 1333(b).

"employee" within the meaning of section 1333(b)(1). The section only excludes from coverage seamen and government employees. In the absence of any other limitation on the face of the statute or in the legislative history of the Lands Act, section 1333(b) should be construed as extending Longshore Act coverage to all victims of disabling or fatal injuries sustained while working to develop the mineral wealth of the OCS. That a given employee is employed by a non-energy concern is of no consequence. Nor does the applicability of section 1333(b) turn on whether, as Kaiser contends, the employee is "primarily land based." As a non-seaman, non-government employee, Robarge clearly satisfies the statutory definition.

Accordingly, Kaiser's petition is DENIED.